IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEVON PRIETO, | ) | CASE NO. 4:18CV00222 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| TOM SCHWEITZER, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the Petition of Jevon Prieto ("Prieto" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Prieto is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the *State v. Prieto*, Mahoning County Case No. 2013 CR 00060. For the following reasons, the undersigned recommends the Petition be DISMISSED

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Prieto's conviction as follows:

> {¶ 3} This case arose while Appellant was a minimum security inmate at the Ohio State Penitentiary ("OSP") in Youngstown, Ohio. The main building at the OSP houses maximum security offenders and is called a "supermax" prison as it houses the state's worst offenders. (Tr. 27–28). The minimum security facility is a 220–bed dormitory-style detention facility with rows of

bunks and open common areas surrounded by a fence. (Tr. 28). The minimum security inmates are permitted contact visitation. (Tr. 32). Visitation occurs by appointment only. (Tr. 29). It does not take place at the minimum security facility.

{¶ 4} To meet their visitors, the inmates are strip-searched at the minimum security prison and then escorted to the sally port at the supermax prison, which is surrounded by a fence with concertina wire. (Tr. 29, 39, 154). A different escort leads the inmates to a visiting room on the fourth floor of the supermax prison. (Tr. 31). On returning to the minimum security prison, the inmates wait in a room while being monitored by a correctional officer until it is their turn to be strip-searched again. (Tr. 33–34). The "strip-out" room has a table separating the correctional officer from the inmate; the inmate removes his clothes and places them on the table for the officer. (Tr. 34–35).

{¶ 5} On January 20, 2011, Appellant was visited by his girlfriend. Thereafter, Appellant was escorted back to the minimum security facility. Correctional Officers Newell and Tanner were in the "strip-out" room, while Correctional Officer Walker watched the inmates waiting to be strip-searched to make sure they did not pass items amongst themselves. (Tr. 145). Officer Newell conducted Appellant's strip-search while Officer Tanner conducted a search of another inmate. (Tr. 64). While Officer Newell was inspecting the inside of one of Appellant's boots, he felt something hard under the insole. (Tr. 65–66, 95). He discovered pills in a twisted bag. (Tr. 65, 67). He noticed three different colors of pills (blue, red, and white) and thought some were shaped like states. (Tr. 66, 97). His report estimated there were between seven and ten pills. (Tr. 85–86).

{¶ 6} Officer Newell showed the pills to Officer Tanner who took them from him. Both officers asked, "What are these?" Moving closer, Appellant replied, "I don't know. What are they?" Officer Newell testified Appellant grabbed the pills from Officer Tanner and threw them in his mouth. (Tr. 68). Officer Tanner testified he lunged over the table at Appellant as the pills moved toward his mouth. The table flipped over. He wrestled him to the floor in an attempt to retrieve the pills. (Tr. 126). Appellant swallowed some pills. (Tr. 68–69).

{¶ 7} Officer Walker testified he entered the room upon hearing the commotion. He recovered two pills from the floor; one was white, and one was pink. (Tr. 147, 150). The pills were tested by a criminalist at the Ohio State Highway Patrol (OSHP) crime lab. The white pill appeared to be Percocet, which contains oxycodone and acetaminophen. (Tr. 107). Testing confirmed the pill contained oxycodone, which is a Schedule II controlled substance that is considered a drug of abuse. (Tr. 108). The pink pill was

2

> stamped "USA" and shaped like the continental United States. (Tr. 113). Testing confirmed it contained benzylpiperazine or BZP, which is a Schedule I stimulant compound and is considered a drug of abuse. (Tr. 110–112).
>
> {¶ 8} Appellant said the boots were not his. (Tr. 91–92). He was transported to the medical unit in the supermax prison. Prior to being placed in administrative segregation, Appellant told a lieutenant the boots were not his, but he then asked the lieutenant to place the boots in the "pack-up" with the rest of his possessions during his time in segregation. (Tr. 172, 174). An investigator with the OSHP, who was assigned to the prison, was unable to make contact with Appellant's girlfriend and could not verify her involvement. (Tr. 209–210). Appellant was released from prison in March 2011, and the testing of the pills was completed in November 2011.

*State v. Prieto*, 2016-Ohio-8480, ¶¶3-8 (Ohio App. 7th Dist. Dec. 16, 2016).

## II. Procedural History

### A. Trial Court Proceedings

In January 2013, the Mahoning County Grand Jury indicted Prieto with two counts of illegal conveyance of a drug of abuse onto the grounds of a detention facility in violation of Ohio Revised Code ("ORC") §3719.011 (Counts One and Two) and one count of tampering with evidence, in violation of ORC §2921.12(A)(1)(B) (Count Three). (Doc. No. 9-1, Exh. 1.) Prieto entered pleas of not guilty to all charges. (Doc. No. 9-1, Exh. 2.)

Jury trial commenced on July 7, 2015. (Doc. No. 9-1, Exh. 3.) Pursuant to Ohio Crim. R. 29, Prieto made a motion for acquittal at the close of the State's case. *Prieto*, 2016-Ohio-8480 at ¶10. The trial court denied this motion. *Id.* On July 8, 2015, the jury returned its verdict, finding Prieto guilty of all charges. (Doc. No. 9-1, Exh. 3.)

On October 7, 2015, the state trial court held a sentencing hearing. The trial court sentenced Prieto to thirty months for Count One, thirty months for Count Two, and thirty months

for Count Three.  (Doc. No. 9-1, Exh. 4.)  The state trial court merged Counts One and Two and ordered the sentences for the merged counts and Count Three to be served consecutively, for an aggregate sentence of sixty months.  (*Id.*)

**B.     Direct Appeal**

On November 5, 2015, Prieto, through counsel, filed a timely Notice of Appeal with the Court of Appeals for the Seventh Appellate District ("state appellate court").  (Doc. No. 9-1, Exh. 5).  In his appellate brief, Prieto raised the following assignments of error:

> I.     Appellant's sentence is both contrary to law and an abuse of discretion as the trial court failed to make any of the findings required by R.C. 2929.14(C)(4) prior to imposing consecutive sentences.
>
> II.    The trial court denied Appellant his constitutional rights to due process and a fair trial, under the Fourteenth Amendment to the Constitution of the United States by denying Appellants motion for judgment of acquittal when the evidence was insufficient to prove "conveyance onto the grounds," an essential element of the offense of Illegal Conveyance of Weapons or Prohibited Items charged in count one and two of the indictment.
>
> III.   The trial court denied Appellant his constitutional rights under the Equal Protection Clause of the United States Constitution by allowing the State of Ohio to use a peremptory challenge on the only African American juror on the jury panel without establishing a race neutral explanation for the excusal of the potential juror.

(Doc. No. 9-1, Exh. 6.)  The State filed a brief in response.  (Doc. No. 9-1, Exh. 7.)

On December 16, 2016, the state appellate court affirmed Prieto's convictions, but remanded for re-sentencing because "the trial court failed to make any statutorily-required consecutive sentence findings in the sentencing entry."  *Prieto*, 2016-Ohio-8480 at ¶15.  (*See also* Doc. No. 9-1, Exh. 8.)

On August 24, 2017, Prieto, proceeding *pro se*, filed a Notice of Appeal with the

Supreme Court of Ohio. (Doc. No. 9-1, Exh. 9.) That same date, Prieto filed a Motion for Leave to File Delayed Appeal with the Supreme Court of Ohio. (Doc. No. 9-1, Exh. 10.) The State did not file a response.

On November 1, 2017, the Supreme Court of Ohio denied Prieto's Motion for Delayed Appeal and dismissed his case. (Doc. No 9-1, Exh. 11.)

**C.      Remand Proceedings in the State Trial Court**

Pursuant to the state appellate court's remand order, the state trial court issued an amended sentencing entry on February 27, 2017. (Doc. No. 9-1, Exh. 12.) Within this amended entry, the trial court made a finding "that consecutive sentences are warranted pursuant to 2924.14(C)(4)(a)." (*Id*.) The state trial court merged Counts One and Two, and resentenced Prieto to 30 months for the merged counts and 30 months for Count Three. (*Id*.) The trial court ordered these sentences to be served consecutively, again resulting in an aggregate sentence of 60 months. (*Id.*) Prieto did not appeal the state trial court's amended sentencing entry.

**D.      Federal Habeas Petition**

On January 22, 2018,[1] Prieto filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

**GROUND ONE**:

> **Supporting Facts**: Violation of the equal protection clause by allowing the state of Ohio to use a pre-emptory challenge on the only African-American juror on the jury panel without

---

[1] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until January 29, 2018, Prieto states he placed it in the prison mailing system on January 22, 2018. (Doc. No. 1 at 13.) Thus, the Court will consider the Petition as filed on January 22, 2018.

5

establishing a race neutral explanation for the excusal of the potential juror (transcripts will show & prove legitimate accusations)

**GROUND TWO**:

**Supporting Facts**: Trial court denied defense Rule 29 motion the evidence was insufficient to prove the elements of the offense also the trial courts overlooked & allowed state's witnesses to perjure themselves by testifying contrary to initial reports witnesses presented irrelevant & tainted evidence & fallacious statements which misled jurors (transcripts will show & prove legitimate accusations)[sic]

**GROUND THREE**:

**Supporting Facts**: trial attorney failed to properly prepare He failed to Raise meritorious Motions Before & During trial appeal attorney failed to Raise meritorious errors in defendant brief nor did he appeal the district court decision not inform defendant of the legal proceedings he failed to properly prepare, investigate & represent defendant his performance was deficient [sic]

**GROUND FOUR**:

**Supporting Facts**: the investigator was unfair & biases towards defendant during his investigation His investigation was in favor of the state nothing was done on defendant beha[lf] to prove his innocents witnesses admit to changing thier stories after meeting with him His witnesses blatantly & openly tampered w/ evidence & committed other malfeasance act & judicial misconduct Mr. Wylie testified & then stated he had nothing to do with this case (transcripts will show & prove legitimate accusations)[sic]

(Doc. No. 1.)

On April 25, 2018, Warden Tom Schweitzer ("Respondent") filed his Return of Writ.

(Doc. No. 9.) Prieto did not file a Traverse.

### III. Procedural Default

**A.     Grounds One & Two**

Respondent argues Grounds One and Two of Prieto's federal habeas petition are procedurally defaulted. (Doc. No. 9 at 9.) Respondent asserts Prieto "failed to fairly present [these claims] to the Ohio Supreme Court for 'one complete round' of the state's appellate review." (*Id.*) Respondent contends the Ohio Supreme Court's dismissal of Prieto's delayed appeal "constitutes an adequate and independent state ground on which the state can foreclose federal review." (*Id.* at 10.) Respondent maintains Prieto is unable to establish cause, prejudice, or miscarriage of justice in order to overcome procedural default. (*Id.* at 11, 16.) Because Prieto did not file a Traverse, he has not directly addressed Respondent's arguments regarding procedural default.

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),(c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135,

138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

9

Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

Based upon these principles, the Court finds Grounds One and Two of Prieto's federal habeas petition are procedurally defaulted. Prieto presented these grounds for relief to the state appellate court on direct appeal. (Doc. No. 9-1, Exh. 6.) On December 16, 2016, the state appellate court affirmed Prieto's conviction[3] and overruled these particular grounds for relief.

---

[3] The Court acknowledges the state appellate court remanded Prieto's case for re-sentencing. (Doc. No. 9-1, Exh. 8.) The state trial court thereafter issued an amended sentencing entry on February 27, 2017. (Doc. No. 9-1, Exh. 12.) Prieto did

(Doc. No. 9-1, Exh. 8.) Thereafter, Prieto had forty-five days, or until January 30 2017, to appeal to the Supreme Court of Ohio, but failed to do so. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(I). Instead, Prieto filed a Motion for Leave to File a Delayed Appeal with the Supreme Court of Ohio on August 24, 2017. (Doc. No. 9-1, Exh. 10.) The Supreme Court of Ohio denied this Motion and dismissed the matter on November 1, 2017. (Doc. No. 9-1, Exh. 11.)

The Court finds Prieto's failure to timely appeal to the Supreme Court of Ohio, in conjunction with that court's denial of his Motion for Delayed Appeal, resulted in procedural default. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)(holding an unexplained decision denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar). Therefore, absent a showing of cause and prejudice, Grounds One and Two should be dismissed.

    **a.**     **Cause and Prejudice**

Prieto may nevertheless obtain a merits review of this claim if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren,* 440 F.3d at 763.

In his Petition, Prieto explains he did not timely appeal to the Supreme Court of Ohio because his "attorney failed to appeal" the state appellate court decision. (Doc. No. 1 at 5, 6.) While the ineffective assistance of counsel can normally provide cause to excuse procedural default, "attorney error cannot constitute cause where the error caused a petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel." *Barley v. Konteh*, 240 F.Supp.2d 708, 714 (N.D. Ohio Dec. 13, 2002)(citing *Coleman v. Thompson*, 501 U.S. 722, 757 (1991).). Here, Prieto had no constitutional right to counsel on his discretionary appeal to the

---

    not appeal this amended sentencing entry.

Supreme Court of Ohio. *Tanner v. Jeffreys*, 516 F.Supp.2d 909, 916 (N.D. Ohio Oct. 19, 2007)("The constitutional right to appointed counsel extends to the first appeal of right and no further.")(citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).). Thus, any purported failure of his attorney to appeal to the Supreme Court of Ohio cannot serve as cause to excuse the procedural default.

Within his state court filings, Prieto provides a different explanation for his failure to timely appeal to the Supreme Court of Ohio. In his Motion for Delayed Appeal, Prieto asserts his attorney failed to inform him of the state appellate court's December 16, 2016 decision. (Doc. No. 9-1, Exh. 10.) He contends he first learned of the state appellate court decision on June 28, 2017, when he checked the status of his appeal in the prison library. (*Id*.) However, Prieto conversely asserts in an attachment to this motion that his attorney informed him "he won part of the appeal [and] lost part" of the appeal on January 18, 2017, which was prior to the 45-day deadline. (*Id*.) Therefore, it is unclear[4] as to the exact date Prieto became aware of the state appellate court decision.

Regardless, the failure of an appellate counsel to timely inform a petitioner of a state appellate court decision can constitute ineffective assistance of counsel. *Smith v. State of Ohio Dept.of Rehab and Corr.*, 463 F.3d 426, 433 (6th Cir. 2006)("counsel has a duty to inform the

---

[4] Assuming, *arguendo*, the Court accepts Prieto's assertion he was unaware of the state appellate court decision until June 28, 2017, Prieto does not explain why it then took him another 57 days to file his Motion for Delayed Appeal with the Supreme Court of Ohio. This 57 days is beyond the 45-day limit provided for by the Supreme Court of Ohio. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(I). Therefore, Prieto "has failed to establish prejudice as a result of his counsel's failure to notify him of the Ohio Court of Appeals decision denying his claims, and thus he cannot rely on his counsel's ineffective assistance to overcome the procedural default" of these claims. *Smith v. State of Ohio Dept.of Rehab and Corr.*, 463 F.3d 426, 436 (6th Cir. 2006).

12

accused of the resolution in a proceeding in a timely fashion so that the accused retains his control over the decision to appeal.") However, ineffective assistance of counsel can only serve as cause to excuse procedural default if the underlying claim of ineffective assistance of counsel is not itself defaulted. *See Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002); *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Here, Prieto did not file a 26(B) Application based on appellate counsel's alleged failure to inform him of the state appellate court decision, and the time to do so has now expired. *See* Ohio App. R. 26(B). Thus, Prieto's suggestion the ineffective assistance of counsel provides cause to excuse the default of these claims is without merit because any underlying ineffective assistance of counsel claim is itself defaulted.

Accordingly, and for all the reasons set forth above, the Court finds Prieto has failed to establish cause and prejudice to excuse the procedural default of Grounds One and Two.

  **b. Actual Innocence**

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513 U.S. at 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324; *see also Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).

Prieto has not provide any argument to establish actual innocence. He does not point to any new, reliable evidence of his innocence which was not presented at trial. Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316.

Accordingly, and in light of the above, it is recommended Grounds One and Two of Prieto's habeas petition be DISMISSED as procedurally defaulted.

**B.      Grounds Three and Four**

Respondent also argues Grounds Three and Four of Prieto's Petition are procedurally defaulted. (Doc. No. 9 at 11.) Respondent asserts "Prieto's Third and Fourth grounds have never been presented to any Ohio courts" despite being "based on allegations that can be determined by examination of the files and records in the case." (*Id*.) Respondent maintains Prieto is unable to establish cause, prejudice, or miscarriage of justice in order to overcome the procedural default. (*Id*. at 15.)

The Court agrees Grounds Three and Four of Prieto's federal habeas petition are procedurally defaulted. As an initial matter, Prieto concedes did not present either of these claims to the state courts. (Doc. No. 1 at 8-10.) A review of the record confirms the state courts have not had the opportunity to review or consider the specific arguments set forth in Grounds Three or Four. Ground Three of his federal habeas Petition raises ineffective assistance of trial and appellate counsel claims. (Doc. No. 1 at 8.) Ground Four contains allegations the investigator was biased against him and the witnesses changed their stories and tampered with evidence. (*Id*. at 9.)

Prieto did not raise any of these claims in his direct appeal to the state appellate court. (*See* Doc. No. 9-1, Exh. 6.) As set forth *supra*, Prieto raised three claims in his direct appeal. The first dealt with his sentencing entry, the second was a sufficiency of the evidence claim, and the third raised arguments pertaining to jury selection. (*Id.*) These claims made no mention of his trial counsel's performance, the investigator's alleged biases, or the witnesses' "changing stories." (*Id.*) Moreover, Prieto did not attempt to re-open his appeal pursuant to Ohio App. R. 26(B), in which he would have raised arguments regarding the ineffective assistance of his appellate counsel.

In addition, Prieto did not present Grounds Three and Four to the state courts in any post-conviction petitions, and the time to file a timely post-conviction petition is long expired. *See* O.R.C. §2953.21(A)(2). Further, there is nothing in the Petition suggesting a state court remedy would be available[5] to Prieto, at this late date, to raise either of these grounds for relief. *See*

---

[5] While Prieto could conceivably now file a delayed 26(B) application with the state appellate court, the state appellate court would likely deny it. Under Ohio App. R. 26(B), an application for reopening must be filed with the state appellate court within 90 days of the journalization of the appellate court's decision, unless "the applicant shows good cause for filing at a later time." Ohio App. R. 26(B)(1). Prieto has not provided any explanation for his decision to not file a Rule 26(B) application and has not indicated he has any plans to do so. Indeed, if he were to now decide to file such an application, it would be over two years late. Moreover, given that Prieto was aware of the ineffectiveness of his appellate counsel when he filed his federal habeas petition over a year ago, there does not appear to be any plausible explanation for his continued failure to file a 26(B) application. The Supreme Court of Ohio has routinely enforced the 90-day deadline set in 26(B), finding it a reasonable procedural requirement. *State v. Gumm*, 814 N.E.2d 861 (2004); *see also, State v. Lamar*, 812 N.E.2d 970 (2004). Moreover, the Supreme Court of Ohio has rejected arguments that a "lack of legal training" can constitute "good cause" for failing to comply with the 90-day deadline. *Lamar*, 812 N.E.2d at 972. Thus, the Court finds "any attempted return to state court with the ineffective assistance of appellate counsel claim would be futile." *Rice v. Welch*, 2014 WL 4794585, *26 (N.D. Ohio Sept. 23, 2014)(finding an ineffective assistance of appellate counsel claim to be procedural defaulted where a petitioner did not file a Rule 26(B) application and did

*Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") Thus, the Court finds Grounds Three and Four are procedurally defaulted.

Moreover, Prieto is unable to establish cause and prejudice to excuse the procedural default of Grounds Three and Four. In his Petition, Prieto explains did not present these claims to the state courts because his appellate attorney failed to raise them. (Doc. No. 1 at 8, 9.) Assuming, *arguendo*, appellate counsel was ineffective for his failure to raise either of these grounds for relief, Prieto did not raise this argument in a Rule 26(B) application, and the 90-day deadline to file such an application has passed. *See* Ohio App. R. 26(B). Thus, Prieto's ineffective assistance of appellate counsel argument is itself procedurally defaulted and cannot provide cause to excuse the procedural default of Grounds Three and Four. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). *See also Barnette v. Bunting*, 2017 WL 1079088 at *3 (N.D. Ohio Mar. 22, 2017).

Prieto also has not demonstrated the procedural default of Grounds Three and Four should be excused on the basis of actual innocence. As noted *supra*, Prieto does not provide any new, reliable evidence which was not presented at trial. Rather, he challenges the credibility of the witnesses and the behavior of the individual who investigated the crime. (Doc. No. 1 at 9.) However, this argument does not establish actual innocence. Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred

---

not provide any reason for his failure to do so).

claim." *Schlup*, 513 U.S. at 316.

Accordingly, and for all the reasons set forth above, it is recommended Ground Three and Four be dismissed as procedurally defaulted.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED as procedurally defaulted.

Date: May 31, 2019
*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**